

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-13-2008

# Johnson v. Comm Social Security

Precedential or Non-Precedential: Precedential

Docket No. 07-2132

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Johnson v. Comm Social Security" (2008). *2008 Decisions.* Paper 939.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/939

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 07-2132

———————

STACI JOHNSON
                              Appellant

v.

COMMISSIONER OF SOCIAL SECURITY

———————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Civil Action No. 05-cv-05060
(Honorable John P. Fullam)

———————

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 17, 2008

Before: SLOVITER, JORDAN and ALARCÓN[*], *Circuit
Judges*.

(Opinion Filed: April 22, 2008)

———————

———————

[*] The Honorable Arthur L. Alarcón, United States Circuit
Judge for the Ninth Judicial Circuit, sitting by designation.

Jason L. Thompson
Leventhal Sutton & Gornstein
3600 Horizon Boulevard
Suite 150
Trevose, PA 19053

      Attorney for Appellant

David F. Chermol
Special Assistant United States Attorney
Andrew Lynch
Social Security Administration
Office of the General Counsel
P.O. Box 41777
Philadelphia, PA 19101

      Attorneys for Appellee

---

OPINION OF THE COURT

---

ALARCÓN, *Circuit Judge*.

Staci K. Johnson appeals the District Court's order affirming the Commissioner of Social Security's denial of Johnson's claim for disability insurance benefits ("DIB") under Title II of the Social Security Act. Johnson contends that the Commissioner's finding was erroneous for two reasons. First, she alleges that the Administrative Law Judge ("ALJ") overlooked several of her treating physician's opinions. Those opinions, she argues, supported a finding that Johnson was disabled. Second, Johnson contends that the ALJ's disability conclusion was based on an answer a vocational expert provided to an incomplete hypothetical question posed by the ALJ. She alleges that the expert's answer did not constitute substantial evidence that Johnson was not disabled because the hypothetical question, which pertained to her ability to secure gainful

2

employment, omitted some of Johnson's impairments.

We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. Neither of Johnson's contentions undermines the ALJ's conclusion. Therefore, we affirm the District Court's decision.

I

Until she stopped working in December 1989, Johnson was a hairdresser and salon manager. She quit as a result of an on-the-job injury, which caused pain in her right arm and shoulder. In 1990, she was diagnosed with thoracic outlet syndrome of her right shoulder. Johnson applied for disability insurance benefits on April 25, 1997, alleging that she became disabled on December 7, 1989 due to "thoracic outlet syndrome of the right shoulder." Johnson was last insured for DIB on March 31, 1991, and in her application, she attempted to establish that she was disabled on or before that date.

Johnson's DIB application was denied. She challenged that initial denial in a hearing before an ALJ. On July 22, 1998, the ALJ denied Johnson's claim, finding that she was not disabled during the relevant time period because her impairments did not prevent her from performing work in the national economy. Johnson appealed, and the Appeals Council remanded the case back to the ALJ because the tape recording of the hearing before the ALJ was partially inaudible. After a second hearing, the same ALJ again found that Johnson was not disabled during the relevant time period because there were "a significant number of jobs in the national economy that she could perform." Johnson appealed that decision, and the Appeals Council remanded the case once more, with specific instructions regarding the evidence the ALJ should consider. The case was reassigned to a different ALJ.

Johnson testified at her third ALJ hearing. Her testimony from the two prior hearings was read into the record. A vocational expert also testified. Johnson was again found to be not disabled during the relevant time period. The ALJ concluded that Johnson has not engaged in substantial gainful

activity since her alleged onset of disability date. However, the ALJ concluded that prior to April 1, 1991, "the claimant retained the residual functional capacity to perform a sedentary work-related activity." Although the ALJ concluded that Johnson could not perform any of her past relevant work, the ALJ did find that Johnson could find other work. Based on testimony provided by the vocational expert, the ALJ concluded that Johnson could work as a "surveillance system monitor . . . call-out operator . . . and . . . order clerk." Therefore, Johnson was not entitled to DIB because prior to April 1, 1991, she "retained the capacity for work that exists in significant numbers in the national economy."

Johnson sought review of the Commissioner's decision before the District Court pursuant to 42 U.S.C. § 405(g). The District Court adopted a Magistrate Judge's Report and Recommendation, which recommended denying Johnson's motion for summary judgment, and granting the Commissioner's motion for summary judgment. The District Court agreed with the Magistrate Judge that substantial evidence supported the Commissioner's finding that Johnson was not entitled to DIB.

II

"While we exercise plenary review with respect to the order for summary judgment, our review of the ALJ's decision is more deferential as we determine whether there is substantial evidence to support the decision of the Commissioner." *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). "Substantial evidence does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (internal quotations and citations omitted).

As a preliminary matter, we note that to receive disability insurance benefits pursuant to Title II of the Social Security Act, a claimant must show that she was insured under the program at the time of onset of her disability. *Kane v. Heckler*, 776 F.2d 1130, 1131 n.1 (3d Cir. 1985). Johnson was insured for DIB

4

through March 31, 1991.  Therefore, the relevant period for purposes of establishing whether she qualifies for DIB is the time between December 7, 1989, her alleged disability onset date, and March 31, 1991, the date she was last insured.

A

Johnson first argues for reversal alleging that "the ALJ improperly disregarded the opinions of Appellant's treating hand specialist."  She breaks this argument into three subparts; she contends that each mandates reversal because the treating doctor's opinions supported a finding that she was disabled during the relevant time period.

Johnson claims that testimony Dr. Hunter provided during her Workers' Compensation claim hearing on October 13, 1993 is the evidence the ALJ should not have overlooked.  She cites to the following portion of Dr. Hunter's testimony:

> The early studies showed that, in fact, [Johnson] did have an early involvement of the brachial plexus, which are the nerves that run the extremity, but more clearly were defined to two specific points in the median nerve.  One near the elbow and the other one at the wrist and the hand, in which there was slowing.  It was documented on two occasions by electromyographic studies as well as the clinical evaluations, that in this nerve is the one specifically involved in how you feel with your thumb, index and middle finger.  The proximal part of this nerve as you pass into the neck under the collar bone and join the brachial plexus was also involved and it's a run down both back and forth.  So its [sic] strange to me another physician on consultation can't observe that the patient had really almost no feeling in this part of her hand.  She couldn't hold small objects.  If she was blindfolded she couldn't pick up a nickel because she couldn't find it with her hand.  She couldn't handle earrings and clasps.

5

Pet'r Br. at 25-26 (citing R. 555) (emphasis added in Petitioner's Brief).  Johnson also cites to Dr. Hunter's testimony from the same hearing in which he stated that despite a number of conservative measures, Johnson "was failing . . . [i]n August of '91, our median nerve problem was that she couldn't feel and she couldn't hold small things with her hand."  *Id.* at 26 (citing R. 556).  "During this same deposition, Dr. Hunter read from his office note of August 15, 1991, at which time he recommended surgery."  *Id.*

In analyzing Johnson's DIB claim, the ALJ followed the Social Security Administration's five-step evaluation process.  Johnson's arguments regarding Dr. Hunter's opinions challenge the ALJ's conclusions regarding Johnson's ability to perform "past relevant work" and "several other jobs" in the national economy.  We construe this as a challenge to the ALJ's step four finding regarding Johnson's residual functional capacity, "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."  *Fargnoli v. Halter*, 247 F.3d 34, 40 (3d Cir. 2001) (internal quotations and citations omitted).  "The ALJ must consider all relevant evidence when determining an individual's residual functional capacity in step four."  *Id.* at 41.

1

We first turn to Johnson's contention that Dr. Hunter's testimony should have determined the outcome of Johnson's claim because it was a treating physician's opinion entitled to "significant, if not controlling evidentiary weight."

"Under applicable regulations and the law of this Court, opinions of a claimant's treating physician are entitled to substantial and at times even controlling weight."  *Fargnoli*, 247 F.3d at 43 (citing 20 C.F.R. § 404.1527(d)(2)).  However, the treating source's opinion is entitled to controlling weight only when it is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record .'"  *Id.* at 43 (quoting 20 C.F.R. § 404.1527(d)(2)).

Johnson does not distinguish between any of the statements in Dr. Hunter's cited testimony, but rather contends that each of them was entitled to controlling weight. However, there are important differences between the statements. The first two underlined portions of Dr. Hunter's testimony ("The early studies showed that, in fact, [Johnson] did have an early involvement of the brachial plexus" and "[i]t was documented on two occasions by electromyographic studies as well as the clinical evaluations"), *were* given controlling weight by the ALJ. The ALJ expressly noted that: "[o]n February 7, 1991, Dr. Hunter reported that clear positive studies of EMG's were read, implicating a brachial plexus traction injury on the right with brachial plexus fixation and chronic neuropathy." This statement supports the ALJ's conclusion that "[b]ased upon a complete review of the medical evidence, the undersigned finds the medical evidence established that prior to April 1, 1991, thoracic outlet syndrome and depression were medically determinable conditions that resulted in more than minimal functional and vocation limitations and required significant medically appropriate treatment regiments."

Similarly, the final piece of cited evidence, that "[d]uring this same deposition, Dr. Hunter read from his office note of August 15, 1991, at which time he recommended surgery," was not improperly overlooked. This exact testimony, and Dr. Hunter's August 15, 1991 office note, are missing from the ALJ's conclusions. However, the ALJ noted that at some time between February 7, 1991, and July 2, 1991, Dr. Hunter "noted that [Johnson] would need surgery." The ALJ's inclusion of this piece of evidence does not support Johnson's contention that the ALJ failed to give Dr. Hunter's surgery conclusion controlling weight.[1]

The section of Dr. Hunter's testimony regarding Johnson's fine manipulation ("the patient had really almost no

---

[1] We are aware of no authority that requires an ALJ to quote from a treating doctor's opinion verbatim in order to evidence the ALJ's grasp of the information contained within.

7

feeling in this part of her hand.  She couldn't hold small objects. If she was blindfolded she couldn't pick up a nickel because she couldn't find it with her hand.  She couldn't handle earrings and clasps") did not make it into the ALJ's opinion.  Similarly, Dr. Hunter's testimony that Johnson "was failing . . . [i]n August of '91, our median nerve problem was that she couldn't feel and she couldn't hold small things with her hand" is not part of the ALJ's conclusions.  However, these portions of testimony were not entitled to controlling weight because they are inconsistent with the other substantial evidence in the record.

The ALJ cited to an overwhelming amount of evidence in support of her conclusion that Johnson retained some use of her hands after March 31, 1991.  The ALJ noted that Johnson was examined on May 28, 1991; at that time, "she had full motion of the shoulder, elbow, wrist, and fingers."  On November 25, 1991, Johnson was evaluated by an occupational therapist, who determined that she had "hand grip strength of 5 pounds on the right and 25 to 30 pounds on the left.  Pinch strength was also 5 pounds on the right and 18 pounds on the left."  Also, the ALJ noted that although Johnson testified that her condition had only worsened, the evidence also established that:

> [Johnson] married and gave birth to two children since March 31, 1991.  While she testified that she was and remains unable to hold, bathe, feed, lift or do any other physical activity for the children at any time, the undersigned finds it odd that there is no record of the claimant having mentioned these limitations to a doctor . . .  Currently, she testifies that she never drives, but the written evidence shows she described vision difficulties interfering with night driving only.

Johnson's arguments that the above-cited testimony was improperly disregarded and entitled to controlling weight are

8

without merit.[2]

2

Johnson also contends that the ALJ should be reversed because an ALJ cannot reject evidence without reason. She asserts that the ALJ had a duty to explain why Dr. Hunter's opinions were credited or not. Much of the testimony Johnson claims was not relied upon by the ALJ was in fact sufficiently incorporated into the ALJ's findings, as explained above. With regard to Dr. Hunter's statements regarding Johnson's ability to use her hands for fine manipulation, we reject Johnson's argument that the ALJ was required to consider it.

Johnson relies on *Burnett v. Comm'r*, 220 F. 3d 112, 121 (3rd Cir. 2000), for the proposition that an ALJ must "'give some indication of the evidence which he rejects and his reason(s) for discounting such evidence.'" Johnson has selectively quoted from the paragraph in which this sentence appears. The paragraph provides:

> The ALJ did err by reason of his failure to consider and explain his reasons for discounting all of the ***pertinent*** evidence before him in making his residual functional capacity determination. In making a residual functional capacity

---

[2] Johnson also cites to Dr. Hunter's testimony that Johnson's impairments rendered her "unable to perform not only her past relevant work, but several other jobs which were offered during the course of her Workers' Compensation claim." This is not the sort of treating source medical opinion entitled to any kind of weight. The applicable regulations provide that "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." 20 C.F.R. § 404.1527 (e)(1). Conclusions of this kind are "reserved to the Commissioner . . . because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." § 404.1527 (e).

9

determination, the ALJ must consider all evidence before him. . . . Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence.

*Burnett*, 220 F.3d at 121 (emphasis added). The paragraph concludes with the admonishment that "'[i]n the absence of such an indication, the reviewing court cannot tell if significant ***probative*** evidence was not credited or simply ignored.'" *Id.* (quoting *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)) (emphasis added).

Citation to the entire paragraph clarifies that an ALJ may not reject pertinent or probative evidence without explanation. *See Cotter*, 642 F.2d at 706 ("[T]here is a particularly acute need for some explanation by the ALJ when s/he has rejected relevant evidence or when there is conflicting probative evidence in the record."); *id.* at 706-07 ("[A]n explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper."). Johnson has cited no authority for the proposition that an ALJ must cite all evidence a claimant presents, including evidence that is irrelevant to her case.

The ALJ was entitled to overlook Dr. Hunter's testimony regarding Johnson's fine manipulations because it was neither pertinent, relevant nor probative. It was elicited on October 13, 1993, in response to the question: "[b]ased not only upon [the October 7, 1993] exam but the exams preceding that, I don't want to go through each one since your treatment spans over three years, but do you have an opinion as to [Johnson's] current medical condition and her diagnosis?" To the extent that the quoted testimony addresses Johnson's health as of October 13, 1993, it does not undercut the ALJ's disability conclusion. Johnson had to establish that she was disabled before April 1, 1991. *See Bacon v. Sullivan*, 969 F.2d 1517, 1518 (3d Cir. 1992) (explaining that to receive disability insurance benefits, an applicant must establish that she was disabled prior to "the date her status as an insured expired").

10

To the extent that Dr. Hunter's fine manipulation testimony speaks to a relevant time period, the ALJ was still entitled to reject it without explanation. Overwhelming evidence in the record discounted its probative value, rendering it irrelevant. As explained above, substantial evidence supports the ALJ's conclusion that as of March 31, 1991, and for several months after that date, Johnson's fine manipulation was not as impaired as Dr. Hunter suggested it was in his testimony.

Johnson's Opening Brief anticipates our conclusion that Dr. Hunter's testimony regarding fine manipulation was irrelevant, and offers several rebuttals. First, she contends that the District Court's rejection of Dr. Hunter's workers' compensation testimony on the ground that the testimony was irrelevant requires reversal. She argues that the District Court's affirmance on this ground was "legally erroneous" because an administrative order must be judged on the grounds upon which "'the record discloses that its action was based.'" Pet'r Br. at 27 n.23 (quoting *Fargnoli*, 247 F.3d at 44 n.7). That is, Johnson alleges that the District Court cannot reject evidence for reasons that the ALJ failed to mention.

Johnson's argument distorts the cited authority. *Fargnoli* criticized the district court for "recognizing the ALJ's failure to consider all of the relevant and probative evidence," but yet attempting "to rectify this error by relying on medical records found in its own independent analysis, and which were not mentioned by the ALJ." 247 F.3d at 44 n.7. *Fargnoli* does not establish that a district court may not explain an ALJ's failure to cite irrelevant evidence, and we cannot reverse the District Court on this ground.

Second, Johnson argues that if Dr. Hunter's testimony was chronologically ambiguous, pursuant to 20 C.F.R. § 416.912(e)(1), Dr. Hunter should have been recontacted to clarify the ambiguity in his testimony. That is, the ALJ should have contacted Dr. Hunter to ask him if his comments regarding Johnson's fine manipulation limitations pertained to the time during which she was insured.

Section 416.912(e)(1) provides that a medical source will be recontacted for purposes of clarification "when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." However, the language in Section 416.912(e)(1) is preceded by the following qualification: recontact will proceed if "the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled." This is an important prerequisite. *See Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he requirement for additional information is triggered only when the evidence from the treating medical source is inadequate to make a determination as to the claimant's disability.").

In failing to cite Dr. Hunter's testimony, the ALJ implicitly rejected it. That rejection did not trigger the ALJ's duty to give Dr. Hunter an opportunity to explain testimony that the record overwhelming disputed.

3

We next turn to Johnson's argument that the ALJ should be reversed because "despite a specific and direct mandate from the Appeals Council . . . the ALJ completely failed to address any of Dr. Hunter's opinions."

On remand, "[t]he administrative law judge shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. § 404.977(b).

In remanding Johnson's case to a third hearing before an ALJ, the Appeals Council noted that "[t]he record contains statements from Dr. Hunter regarding the claimant's work limitations that are not addressed in the decision." App. at 58 (citing Exhibit 11F, and pages 141 and 142 of Exhibit 1F). Contrary to Johnson's assertions, the Appeals Council did not

12

order the ALJ to expressly consider those exhibits. Rather, it ordered the ALJ to: "[g]ive consideration to the treating source opinion . . . [f]urther evaluate the claimant's mental impairment . . . [g]ive further consideration to the claimant's maximum residual functional capacity . . . [and] [o]btain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base."

The ALJ devoted ample consideration to Johnson's treating physicians. With regard to Dr. Hunter, the ALJ described three notes about Johnson's impairments written by Dr. Hunter in detail. The ALJ's decision complies with 20 C.F.R. § 404.977(b).

B

Johnson also argues that the ALJ committed reversible error because she posed an incomplete hypothetical question to a vocational expert. Johnson contends that the hypothetical did not incorporate the limitations from Dr. Hunter's opinions.

At step five of the disability analysis, the burden shifts to the Commissioner "to show that other jobs exist in significant numbers in the national economy that the claimant could perform." *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005). "Advisory testimony from a vocational expert is often sought by the ALJ for that purpose . . . and factors to be considered include medical impairments, age, education, work experience and RFC." *Id.* "We do not require an ALJ to submit to the vocational expert every impairment *alleged* by a claimant." *Id.* at 554 (emphasis added). Rather, "the hypotheticals posed must 'accurately portray' the claimant's impairments and [] the expert must be given an opportunity to evaluate those impairments 'as contained in the record.'" *Id.* (citation omitted).

Johnson contends that the hypothetical question posed was incomplete because "the ALJ failed to address Dr. Hunter's opinions regarding Johnson's significant functional limitations, especially the limitations on fine manipulation." Also, she

13

argues that "Dr. Hunter opined that Johnson had essentially no functional use of the dominant right upper extremity." Johnson alleges that bilateral manual dexterity is necessary for substantially all unskilled sedentary occupations.

The ALJ's hypothetical question instructed the vocational expert that:

> I want you to assume an individual of the Claimant's age, education and work experience, having the following residual functional capacity: being able to lift up to 10 pounds, sit for six hours, stand and walk for two hours with an at-will sit/stand option; no repetitive reaching, fingering and handling; no overhead reaching – that's bilaterally; and being limited to simple, repetitive tasks. Could that individual return to Claimant's past relevant work?

The vocational expert answered that question "no." The ALJ clarified that by "repetitive tasks" she meant "continuous" tasks. Also, the ALJ noted that she wanted to hear about the availability of jobs "with only occasional hand-use." The vocational expert listed several jobs that a person only able to use her hands occasionally could perform.

The hypothetical posed by the ALJ accurately portrays Johnson's impairments. The only evidence Johnson presents in support of her contention that she had significant "fine manipulation" limitations is not supported by a citation to the record. To the extent that Johnson relies on Dr. Hunter's testimony that Johnson "couldn't hold small objects" or "pick up a nickel," those statements do not accurately portray Johnson's impairments; therefore, the ALJ was not required to incorporate them into her hypothetical question. As explained above, overwhelming evidence suggests that prior to April 1, 1991, Johnson retained "occasional hand use." Nothing about the hypothetical requires reversal. For that reason, we need not determine whether a person who lacks bilateral manual dexterity is presumptively disabled.

14

## III

The ALJ's decision denying Johnson's DIB addressed Johnson's medical history, from her alleged onset date of December 7, 1989, to the present. The ALJ's decision cited treatment notes from Johnson's orthopedist, psychologist, and hand surgeons, among others. The ALJ also noted Johnson's own testimony regarding the severity of her pain and functional limitations. The ALJ resolved inconsistencies in the record, and gave multiple reasons in support of her conclusion that Johnson's claims regarding her physical capacities prior to March 31, 1991 were somewhat unreliable. The ALJ also cited an occupational therapist's assessment of Johnson's functional capacities as of November 25, 1991.

We conclude that the ALJ's decision is an exhaustive evaluation of the evidence in this case, and that the ALJ's conclusion is supported by substantial evidence.

**AFFIRMED.**