

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-23-2009

# Phillip McQueen v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-2890

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Phillip McQueen v. Comm Social Security" (2009). *2009 Decisions.* Paper 1485.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1485

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 08-2890

———————

PHILLIP McQUEEN

Appellant

v.

COMMISSIONER OF SOCIAL SECURITY

———————

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 07-CV-2092)
District Judge: Honorable William J. Martini

———————

Submitted Under Third Circuit LAR 34.1(a)
April 17, 2009

———————

Before: McKEE, SMITH, and VAN ANTWERPEN, <u>Circuit Judges</u>

(Opinion filed: April 23, 2009)

———————

OPINION OF THE COURT

———————

VAN ANTWERPEN, <u>Circuit Judge</u>

Phillip McQueen appeals the District Court's April 30, 2008 order affirming the

Commissioner of Social Security's ("Commissioner") denial of his claim for disability

insurance benefits under Title II of the Social Security Act. Because the Commissioner's decision to deny benefits was based on substantial evidence, we will affirm the District Court's decision upholding the denial of benefits.

I.

Because we write solely for the parties, we will address only those facts necessary to our decision.

Phillip McQueen is a sixty-one-year-old individual who worked as a school teacher from 1997 until February 1, 2004. On December 8, 2004, McQueen filed a claim for disability benefits on the basis of hypertension, diabetes, and an enlarged prostate, which the Commissioner denied in June 2005. McQueen then sought reconsideration of that denial based on lumbar disc disease and diabetes as well as depression and anxiety; the Commissioner again denied his application. McQueen filed a timely request for de novo review before an Administrative Law Judge ("ALJ"). On August 24, 2006, a hearing took place before the ALJ, Michal Lissek, who concluded that McQueen was not disabled and denied his application for disability benefits on November 17, 2006. In reaching the decision that McQueen was not disabled, the ALJ found that, while McQueen suffered from "a 'severe' impairment involving lower back pain, dysthymic disorder, and anxiety disorder," the evidence did "not disclose medical findings which meet or equal in severity the clinical criteria of any impairment" as provided in the relevant regulations. The ALJ concluded that McQueen had the residual functional capacity to perform "the full range of light work," including the work required of him in

2

his former job as a school teacher.

After the ALJ's denial of his application for benefits, McQueen sought review from the Appeals Council, which denied his request upon concluding that no grounds for review existed. This denial by the Appeals Council constituted a final decision of the Commissioner. *See Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001) ("A claimant who was unsuccessful in the administrative process may seek judicial review once there is a final decision by the Commissioner of Social Security. If the Appeals Council denies the request for review, the ALJ's decision is the Commissioner's final decision." (citations omitted)).

On May 4, 2007, McQueen filed suit challenging the Commissioner's final ruling in the U.S. District Court for the District of New Jersey. 42 U.S.C. § 405(g). On April 30, 2008, the District Court affirmed the final decision of the Commissioner and dismissed McQueen's appeal. McQueen filed a timely notice of appeal on June 26, 2008.

II.

The District Court properly exercised jurisdiction pursuant to 42 U.S.C. § 405(g) to review the Commissioner's final decision. This Court has jurisdiction pursuant to 28 U.S.C. § 1291. This Court exercises plenary review over the District Court's order and reviews the Commissioner's denial of benefits for substantial evidence. 42 U.S.C. § 405(g); *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 359 (3d Cir. 2004). "'Substantial evidence does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a

3

conclusion.'" *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)).

III.

The Social Security Administration has set forth a five-step process to determine if a claimant is disabled. Those steps inquire whether the claimant "(1) is engaged in substantial gainful activity; (2) suffers from an impairment or combination of impairments that is 'severe'; (3) suffers from an impairment or combination of impairments that meets or equals a listed impairment; (4) is able to perform his or her past relevant work; and (5) is able to perform work existing in significant numbers in the national economy." *McCrea*, 370 F.3d at 360; *accord* 20 C.F.R. § 404.1520(a)(4). If the claimant is determined to be not disabled at any point, the inquiry stops. *Id.*

Following his step-one determination that McQueen had not engaged in substantial gainful activity since February 1, 2004, the ALJ found that McQueen had a "severe" impairment resulting from lower back pain, dysthymic disorder, and anxiety disorder at step two of the disability analysis. At the next step, the ALJ concluded that McQueen's impairments did not reach the level of severity of those listed in the relevant regulations. *See* 20 C.F.R. § 404, subpt. P. app. 1. At step four, the ALJ found that McQueen was not disabled because he retained the residual functional capacity to perform his past relevant work as a school teacher. McQueen challenges the ALJ's analysis at steps two and four of this process.

*A.     Contradictory Findings at Steps Two and Four of the Administrative Decision*

McQueen contends that the ALJ's step-two finding that he had a "severe" impairment involving lower back pain, dysthymic disorder, and anxiety disorder was inconsistent with the subsequent determination that he had no significant nonexertional limitations. Step two of the Commissioner's disability analysis requires the ALJ to determine whether the claimant suffers from an impairment that is "severe." As the District Court observed, this inquiry requires consideration of both exertional and nonexertional limitations, with all limitations considered "holistically [to] determine whether their combined effect is a severe impairment." *See* 20 C.F.R. § 404.1569a (describing exertional and nonexertional limitations).

The ALJ properly performed step two of the disability analysis by considering the collective effect of McQueen's impairments. 20 C.F.R. § 404.1523 ("In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity."). Contrary to McQueen's assertions, the ALJ did not "retreat" from a finding of three distinct severe impairments. Although the ALJ concluded that, when considered together, McQueen's lower back pain, dysthymic disorder, and anxiety disorder constituted one severe impairment, it went on to determine that the evidence did not show that McQueen had any condition that reached the level of severity set forth in the regulations. The ALJ specifically noted that evidence of McQueen's lower back pain did not demonstrate the

5

severity of listed impairments. With respect to McQueen's mental status, the ALJ concluded that his "mental impairment has not had any greater than a minimal or slight impact on [his] ability to perform work-related activities and therefore, has not constituted a 'severe' impairment within the meaning of the Social Security Act."

The ALJ's determination that McQueen's impairments were collectively severe does not conflict with a later finding that McQueen's nonexertional impairments were insignificant. Indeed, the determination that McQueen's nonexertional impairments were insignificant was supported by substantial evidence. The ALJ considered the reports of several doctors, none of whom reported that McQueen suffered from significant nonexertional limitations.

The ALJ's conclusion that McQueen's mental impairments were insignificant was supported by substantial evidence, most notably the assessments of McQueen's treating psychiatrist, Dr. Cruickshank. In August 2005, Dr. Cruickshank reported that McQueen was "fully oriented" and "[c]ooperative" but observed that he presented his history in a "vague" manner. Dr. Cruickshank determined that McQueen exhibited an adjustment disorder and an anxiety disorder but assessed his impairment as slight and declined to prescribe any medication. In September 2005, Dr. Cruickshank noted that McQueen was anxious and frustrated; he prescribed a sleep aid and, a month later, noted that McQueen's anxiety seemed to abate.

Dr. Cruickshank's evaluation was generally consistent with the subsequent evaluations of two Disability Determination Services ("DDS") doctors. In September

6

2005, Dr. Gerard Figurelli evaluated McQueen's mental impairment and determined that, while "mildly anxious in mood," he appeared cheerful and "manifested no mood instability." Figurelli determined that McQueen suffered from "Dysthymic Disorder, late onset" and "Anxiety Disorder." Figurelli concluded that he was unable to assess "the nature and severity of the current medical conditions that [McQueen] reportedly experiences" because of the lack of "background information regarding the nature of [McQueen's] history of emotional difficulties or the treatment." Dr. Tan also evaluated McQueen in September 2005 and concluded that McQueen's impairments caused him to suffer only mild restrictions on daily activities and mild difficulties in maintaining concentration or social functioning. Dr. Tan disagreed with Dr. Figurelli's assessment that McQueen exhibited dysthymic disorder and noted that McQueen was not entirely credible.

These medical assessments, coupled with McQueen's testimony, all support the determination that McQueen's nonphysical impairments are not severe. For example, in the hearing before the ALJ, McQueen was unable to provide specific examples of how his mental impairments affected him. He reported that he can perform household chores, handle his own finances, use public transportation, and read and exercise for pleasure. Accordingly, the ALJ's assessment that McQueen did not suffer from a severe mental impairment was supported by substantial evidence.

B.    *Step Four Assessment*

McQueen also argues that the ALJ erred in finding that he could perform "the full

7

range of light work" and that, therefore, he had the residual functional capacity to perform his past relevant work as a school teacher. At step four of the disability analysis, the ALJ must assess whether a claimant's residual functional capacity enables him to engage in past relevant work. This inquiry requires the ALJ to make findings as to the claimant's residual functional capacity, make findings as to the physical and mental demands of the past relevant work, and determine whether the claimant has the capacity required to perform the past relevant work. *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000). The ALJ determined that McQueen

> has had, at all material times, the residual functional capacity to perform work that involves lifting and carrying objects weighing up to 20 pounds; frequently lifting and carrying objects weighing up to 10 pounds; standing, walking, and sitting up to six hours in an eight-hour day; pushing and pulling arm and leg controls; and the full range of light work. The claimant has not had any significant non-exertional limitations.

*See* 20 C.F.R. § 404.1567(b) (detailing physical exertion requirements for jobs involving "[l]ight work"). Based on this assessment, the ALJ concluded that McQueen had the residual functional capacity to perform "his past relevant work of teacher as the job is generally performed in the national economy." To reach this conclusion, the ALJ consulted the Department of Labor's *Dictionary of Occupational Titles*, which classifies the occupation of school teacher as light exertional work, to determine the demands of the position of teacher. *See* 20 C.F.R. § 404.1560(b)(2).

Although the ALJ did not provide an extensive analysis at stage four, his explanation of McQueen's residual functional capacity for light work and his

8

determination, based on the *Dictionary of Occupational Titles*, that such a residual functional capacity enabled McQueen to perform his past relevant work as a school teacher, was supported by substantial evidence. As the District Court observed, the "ALJ appears to have considered all of the evidence and to have given adequate reasons for rejecting the evidence he rejected." *See Burnett*, 220 F.3d at 121 ("In making a residual functional capacity determination, the ALJ must consider all evidence before him. Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." (citation omitted)).

In determining that McQueen's residual functional capacity enabled McQueen to engage in "the full range of light work," the ALJ considered the reports of medical professionals and McQueen's subjective assessments of his condition. In doing so, the ALJ credited the evaluations of DDS physicians over the evaluation of McQueen's treating physician, Dr. Magdy Elamir, and determined that McQueen's assessments were not credible.

In September 2006, Dr. Elamir completed a report suggesting that McQueen's pain prevented him from engaging in light work. Dr. Elamir's notes in this report are almost entirely illegible, and his responses to several prompts, such as an inquiry as to the maximum amount of weight the patient could lift infrequently, are also illegible. Although the opinion of a treating physician generally is given controlling weight, this controlling weight is only given when the opinion "is well-supported by medically

9

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). The ALJ noted that Dr. Elamir's assessment was "not supported by any treatment notes nor provided with any reasonable explanation, and overall, is inconsistent with the evidence of record." Based on the conclusory nature of Dr. Elamir's diagnosis, the indecipherable notes in Dr. Elamir's report, and the lack of supporting explanations for Dr. Elamir's conclusions, the ALJ was entitled to give the diagnosis of McQueen's treating physician less weight and to credit the opinions of other doctors. *See Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) ("An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." (citing *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985)).

As noted, the ALJ credited the reports of DDS physicians. For example, in April 2005, Dr. Franky Merlin of DDS evaluated McQueen. Dr. Merlin noted that McQueen reported "intermittent" pain that was exacerbated by "sitting or standing too long" but "relieved" by walking. Dr. Merlin determined that McQueen had lower back pain but observed that he had "no difficulty getting up from a seated position," that his "[g]rasping strength and manipulative function were not impaired," and that he could "flex his spine forward 0 to 90 degrees, squat, and walk on his heels and toes." Dr. Merlin determined that McQueen "was able to sit, stand, walk, handle objects, hear, speak, and travel, but he should not lift or carry heavy objects." In September 2005, Dr. Marc Weber, another

10

DDS physician, detected "tenderness at multiple levels of the lumbar spine" and determined that McQueen had "chronic low back pain." He noted that McQueen could not perform a squat and experienced some "sensory deficit" in both feet. In October 2005, Dr. Pirone of DDS prepared a residual functional capacity assessment in which he determined that McQueen experienced "low back pain, which varies in intensity" and that he could "[o]ccasionally" lift twenty pounds, "[f]requently" lift ten pounds, and sit for a total of six hours in an eight-hour workday.

In light of these evaluations, the ALJ also determined that McQueen's subjective assessments were not credible. An ALJ is permitted to determine that subjective complaints of pain are inconsistent with the objective medical evidence and other evidence on the record. 20 C.F.R. § 404.1529; *see also Hartranft*, 181 F.3d at 362 (observing that ALJ must evaluate "the extent to which a claimant is accurately stating the degree of pain or the extent to which he . . . is disabled by it"). McQueen himself asserted that he could perform activities required by daily life, such as cooking and cleaning, that he walks independently, and that he "enjoys exercising as his primary leisure activity."

Further, the ALJ properly concluded that McQueen's residual functional capacity for light work allowed him to engage in his past relevant work as a school teacher. As noted, to reach this decision, the ALJ relied on McQueen's testimony about his job and the characterization of the job of school teacher in the *Dictionary of Occupational Titles* as involving light exertional work. 20 C.F.R. § 404.1560(b)(2). Because the findings that

11

McQueen could engage in the full range of light work and that this residual functional capacity enabled McQueen to return to his past relevant work of school teacher were supported by substantial evidence, the ALJ properly determined that McQueen was not disabled.

IV.

We have considered all other arguments made by the parties on appeal and conclude that no further discussion is necessary. For the above reasons, we will affirm the decision of the District Court.