NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1776
_____

BRYAN KEITH SZALLAR,
                                        Appellant
v.

COMMISSIONER SOCIAL SECURITY
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-14-cv-00809)
District Judge: Honorable Donetta W. Ambrose
_____

Submitted Under Third Circuit LAR 34.1(a)
November 19, 2015

Before: AMBRO, HARDIMAN, and NYGAARD, *Circuit Judges*.

(Filed: November 24, 2015)

_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

HARDIMAN, *Circuit Judge*.

Bryan Keith Szallar appeals from the District Court's summary judgment affirming the Commissioner of Social Security's decision denying him disability benefits under the Social Security Act. We will affirm.

I

Szallar is a four-year college graduate who, until the time of his injury, was a manager at a sporting goods store. In April 2010, Szallar tripped over a curb outside his workplace and sustained a severe injury to his right shoulder. Medical scans later revealed a "comminuted fracture" of his right proximal humerus. App. 69, 95. Szallar's medical treatment records indicate that his right shoulder has since healed "quite well functionally" with physical therapy, but with "alignment that is not perfect." App. 94–97, 175. These records also show that Szallar complains of constant pain and intermittent numbness, and that he has developed "not horrible" carpal tunnel syndrome in his right arm. App. 94–97, 175. Szallar has not returned to work since his 2010 fall.

Szallar filed a claim for disability insurance benefits under the Social Security Act in July 2011. After being initially denied, Szallar requested a hearing before an Administrative Law Judge (ALJ), which he received on October 17, 2012. Both Szallar and an impartial vocational expert testified at the hearing. In a subsequent written decision, the ALJ found Szallar "not disabled" under the Social Security Act because his Residual Functional Capacity (RFC) would permit him to "mak[e] a successful adjustment to other work that exists in significant numbers in the national economy."

2

App. 98; *see also* 20 C.F.R. § 404.1545(a)(1) (defining RFC as "the most [a claimant] can still do despite [the claimant's physical and mental] limitations"). The Appeals Council denied Szallar's request for review, thus rendering the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. Szallar sought judicial review in the District Court, which affirmed, and then filed this appeal.[1]

## II

## A

Szallar raises three challenges on appeal. First, he argues that the ALJ's RFC determination was not supported by substantial evidence.[2] Szallar begins this argument by taking issue with the ALJ's reluctance to fully credit Szallar's hearing testimony on the limiting effects of his shoulder pain. The ALJ found that "[Szallar's testimony]

---

[1] The District Court had jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). We have jurisdiction under 28 U.S.C. § 1291. While our review of the Commissioner's legal determinations is plenary, we review her factual findings for "substantial evidence." 42 U.S.C. § 405(g); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Thus, we must uphold any fact found by the Commissioner as conclusive if supported by substantial evidence, that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (quoting *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981)).

[2] The ALJ determined Szallar's RFC as the capacity "to perform light work as defined in 20 CFR 404.1567(b), except he can perform only occasional fine dexterity, involving feeling, picking or pinching with his dominant, right upper extremity, and he can perform only incidental postural adaptations, defined as totaling not more than 1/6 of a routine 8-hour work shift. Further, [Szallar] cannot be exposed to hazards, such as unprotected heights and dangerous machinery. Finally, given his pain and sleep deprivation, he can perform only simple, routine and repetitive tasks involving no independent judgment or discretion, and no changes in work processes." App. 94.

concerning the intensity, persistence[,] and limiting effects of [his medically determinable impairments was] not credible to the extent [it was] inconsistent with" his RFC. App. 95. Szallar counters that his testimony was "wholly consistent." Szallar Br. 14.

Szallar's argument is unpersuasive primarily because the ALJ's assessment of his credibility is entitled to our substantial deference, *see, e.g.*, *Zirnsak v. Colvin*, 777 F.3d 607, 612–13 (3d Cir. 2014), and our review of the record leads us to conclude that the ALJ properly accounted for inconsistencies in Szallar's testimony. For instance, although Szallar maintained that he could stand for only 5 to 10 minutes without developing numbness in his right arm, he also testified that he was able to go on long outdoor walks for 6 to 12 miles. Similarly, although he was unsure of his ability to "sit and watch the monitor of a computer throughout the day," Szallar admitted that he "sends emails, uses Facebook, plays games for short periods of time and performs other functions at home on his computer." App. 77, 83, 95. The administrative record also indicates that the ALJ properly considered Szallar's subjective description of his pain "in relation to the objective medical evidence and other evidence" Szallar provided. 20 C.F.R. § 404.1529(c)(4). Accordingly, we agree with the District Court that the ALJ's assessment of Szallar's credibility is supported by substantial evidence.

Next, Szallar asserts that the ALJ failed to consider the medical opinions of his treating physicians. Although the record is replete with medical opinions regarding Szallar's diagnosis, treatment, and prognosis, none of Szallar's treating physicians opined on his capacity to work or specific functional limitations—a point that the District Court

4

underscored. And contrary to Szallar's position, the ALJ gave a detailed exposition of Szallar's longitudinal medical history, including the opinions of Drs. Calvin J. Miller, Vonda Wright, Jalit Tuchinda, and Robert Kaufmann. Our review of the record accords with the ALJ's conclusion that "even if [Szallar's] shoulder injury could be characterized as disabling initially, . . . it improved significantly" over the course of the following year and responded well to physical therapy. App. 95, 97. If anything, the ALJ's determination of Szallar's RFC recognized that his right shoulder "will never be the same" and is unlikely to get better, although it has improved since his fall in April 2010. App. 97, 157. The ALJ thus properly accounted for the opinions of Szallar's treating physicians, and we agree with the District Court that his RFC determination is supported by substantial evidence.

## B

Szallar next argues that the ALJ improperly disregarded the vocational expert's testimony at the October 2012 hearing. The ALJ posed two hypotheticals to the expert. The first hypothetical asked whether other "vocational opportunities" (besides retail management) would be available for an individual matching Szallar's background and the ALJ's subsequently determined RFC.[3] App. 85. The expert indicated that the hypothetical individual could work as a telephone solicitor, a ticket seller, or as a telephone clerk. The ALJ then modified the hypothetical by requiring the individual to

---

[3] Szallar's brief on appeal concedes that this hypothetical "is consistent with [the ALJ's] RFC assessment." Szallar Br. 17.

take "unscheduled rest breaks . . . [that] would vary in number, frequency and duration . . . but on an average entail 15 minutes per hour in order to persist throughout the course of an eight-hour day." App. 86. The vocational expert responded that "there would be no jobs" available to the second hypothetical individual. *Id*. Szallar argues that the ALJ ignored this second hypothetical in finding him not disabled.

To the extent Szallar's second argument disputes the validity of the ALJ's RFC determination—the same grounds as his first argument—it is unpersuasive for the same reasons. The ALJ's hypothetical questions were required to "accurately convey to the vocational expert all of the claimant's *credibly established limitations.*" *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) (emphasis in original) (citing *Plummer v. Apfel*, 186 F.3d 422, 431 (3d Cir. 1999)). The first hypothetical mirrored the RFC the ALJ later determined for Szallar, and Szallar has not shown the RFC to be unsupported by substantial evidence. The second hypothetical introduced limitations that were not reflected in any objective medical evidence of record, nor consistently established by Szallar's own testimony. Accordingly, although the Commissioner is required to consider all probative evidence of record in making a disability determination, *see* 42 U.S.C. § 423(d)(5)(B); *Johnson v. Commissioner of Social Security*, 529 F.3d 198, 203–05 (3d Cir. 2008), the ALJ's reliance on the vocational expert's response to the first hypothetical alone was permissible.

6

Finally, Szallar challenges the ALJ's determination that his impairments did not meet or equal the severity of an impairment listed in Appendix 1 of Subpart P, Part 404, of Title 20, Code of Federal Regulations. In so doing, the ALJ stated, in full:

> Consideration has been given to all of the claimant's musculoskeletal system complaints in accordance with the revised musculoskeletal listings published at *66 Red. Reg. 58010, November 19, 2001*, effective February 19, 2002. None of the medical findings concerning the claimant's impairments meet or equal the criteria for severity in any of those listings.

App. 93. Szallar argues that this explanation amounts to a conclusory statement that falls short of the reasoning required by *Burnett v. Commissioner of Social Security Administration*, 220 F.3d 112, 119–20 (3d Cir. 2000), and *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

In *Burnett*, the ALJ failed to specify the claimant's impairments and also failed to identify any specific listings that informed the ALJ's analysis. 220 F.3d at 119–20. Accordingly, we remanded the decision for further explanation. *Id.* at 120. The ALJ in *Jones*, by contrast, specified the claimant's impairments—"chronic urticaria, asthma, chronic obstructive and restrictive lung disease, and anxiety and depression"—and, "after carefully compar[ing] the claimant's signs, symptoms, and laboratory findings with the criteria specified in all of the Listings of Impairments," concluded that "the claimant's impairments do not meet or equal the criteria established for an impairment shown in the Listings." 364 F.3d at 503 (alteration in original) (internal quotation marks omitted). Based on our examination of the listed impairments and the ALJ's decision as a whole,

we found the ALJ's determination in *Jones* to have been adequately explained and supported by substantial evidence. *Id.* at 504–05.

The ALJ in this case found that Szallar had "the following severe impairments: [a] comminuted fracture of the proximal right humerus[] and right carpal tunnel syndrome." App. 93. And he referenced the musculoskeletal listings published in the Revised Medical Criteria for Determination of Disability, Musculoskeletal System and Related Criteria, 66 Fed. Reg. 58,010 (Nov. 19, 2001). As in *Jones*, the record is sufficient for judicial review, and we agree with the District Court that Szallar's impairments implicate only Listing 101.02, and that Szallar failed to meet its criteria because his impairments affect only his right arm and are not present in "each upper extremity." 66 Fed. Reg. at 58,044; *see also* 20 C.F.R. pt. 400, subpt. P, app. 1, sec. 1.02. Accordingly, the ALJ's determination was supported by substantial evidence and we see no reason to remand his decision for further explanation.

III

For the reasons stated, we will affirm the order of the District Court.