**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1332
_____

ANDRES SANCHEZ,

Appellant

v.

COMMISSIONER SOCIAL SECURITY

_____

On Appeal from the United States District Court
for the District of New Jersey
(D. C. Civil Action No. 2-15-cv-00415)
District Judge:  Honorable Susan D. Wigenton

_____

Submitted under Third Circuit LAR 34.1(a)
on January 26, 2017

Before:  CHAGARES, RESTREPO and ROTH, <u>Circuit Judges</u>

(Opinion filed: August 3, 2017)

_____

OPINION[*]

_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

ROTH, Circuit Judge

Andres Sanchez appeals the District Court's order affirming a decision by the Commissioner of Social Security denying Sanchez's application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act.[1] For the reasons set forth below, we will affirm.

I.

Sanchez claims to have suffered a disability starting on December 31, 2006, as a result of a workplace accident in which he twisted his back. On September 22, 2011, Sanchez filed the underlying applications for disability benefits and supplemental social security income. Both were denied without a hearing on December 29, 2011, and again upon reconsideration on June 5, 2012. Sanchez then filed a request for a hearing before an administrative law judge (ALJ), which was granted on July 24, 2012. The hearing, at which Sanchez and a vocational expert testified and detailed medical reports were submitted, was held on June 21, 2013.

The ALJ found that Sanchez suffered from a series of severe impairments in his spine and neck, as well as one severe impairment in his right knee. The ALJ declined, however, to find that Sanchez's spinal issues compromised any nerve roots or his spinal cord. The ALJ further found that Sanchez's diminished vision in his right eye did not constitute a severe disability, pointing to the strength of vision in Sanchez's left eye. Based on these findings, the ALJ determined that Sanchez "remained able to sit, stand,

---

[1] 42 U.S.C. §§401-434, 1381-1383.

walk, and carry,"[2] and thus had a residual functional capacity (RFC) to perform

"sedentary, unskilled work with sit/stand option [sic] [that would not require] lifting more

than five pounds . . .." Finding that such work existed in significant numbers in the

national economy, the ALJ denied both of Sanchez's applications. The Appeals Council

denied review.

Sanchez then sought review of the ALJ's decision in the District Court, which

found that the ALJ's factual determinations as to the nature and extent of Sanchez's pain

and as to Sanchez's RFC were supported by substantial evidence. This appeal followed.

II.[3]

Sanchez raises three issues on appeal. First, he claims that the ALJ's RFC

determination was not supported by substantial evidence. Second, Sanchez contends that

the ALJ erred in finding that suitable employment existed in significant numbers in the

national economy. Third, Sanchez claims that the District Court did not adequately

address his opposition to the ALJ's conclusions. Because our review of the underlying

ALJ's decision follows the same standard as did the District Court's review,[4] our

conclusion to affirm the ALJ's denial of benefits renders a review of this third contention

unnecessary.

---

[2] The ALJ also noted that Sanchez uses a cane but pointed to Sanchez's own admission that he can walk around indoors without the cane in finding that Sanchez can still walk.
[3] The District Court had jurisdiction over this matter pursuant to 42 U.S.C. §§ 405(g), 421(d), and 1383(c)(3). We have jurisdiction of this appeal pursuant to 28 U.S.C. § 1291. Our review is limited to determining whether substantial evidence supports the ALJ's finding that Sanchez was not disabled as of the date of the hearing. *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011) (citation omitted).
[4] *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118 (3d Cir. 2000) (citations omitted).

A.

We first address whether substantial evidence supports the ALJ's RFC

determination, which found that Sanchez could "perform sedentary work as defined in 20

C.F.R. [§§] 404.1567(a) and 416.967(a)," but "[could not] work at heights or with

machinery due to reduced binocular vision" or "lift more than five pounds," and "must

alternate between sitting and standing at his election." As we have explained previously,

"substantial evidence" need not be a preponderance; rather, we will affirm so long as

there is sufficient evidence that a "reasonable mind might accept as adequate to support a

conclusion."[5]

Sanchez argues that the ALJ's RFC determination fails to meet this standard

because the ALJ (1) failed to consider Sanchez's visual impairment in the RFC

determination, (2) ignored Sanchez's ambulatory difficulties and overstated his ability to

remain seated, and (3) inadequately considered Sanchez's testimony as to pain. Sanchez

also asserts a blanket argument that the ALJ failed to adequately explain his decision.

None of these arguments persuade us that the ALJ committed any error. The ALJ's

decision explicitly discussed Sanchez's visual impairment, finding that he failed to

establish a loss of central visual acuity within the meaning of the regulations, but

nonetheless modifying Sanchez's RFC to reflect that he "cannot work at heights or [with]

machinery due to reduced binocular vision." Similarly, the ALJ noted Sanchez's

ambulatory difficulties, finding that "the claimant used a cane for ambulation, which was

---

[5] *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (internal quotation marks and citation omitted).

4

prescribed by his private doctor primarily outside for walking, standing, and support." The ALJ then explained his view that this was not an extreme limitation, based on the fact that Sanchez can walk in the house without a cane. While Sanchez correctly notes that there is some evidence to the contrary, there is adequate evidence in the record to support the ALJ's conclusion. The same is true of Sanchez's testimony as to pain. After finding Sanchez's testimony not entirely credible, the ALJ determined that Sanchez's back, neck, and leg pain could be accommodated in a workplace. Here, unlike the cases cited by Sanchez, the ALJ fully credited the competent medical evidence, which the ALJ then determined did not lend support to the full extent of Sanchez's claimed pain. We find no error in the ALJ's analysis in this respect.

## B.

We turn next to the question of whether the ALJ erred in concluding that a significant number of jobs in the national economy exist for someone with Sanchez's RFC. At the outset, we note that the vast majority of arguments Sanchez raises with respect to the vocational expert's testimony are premised on his argument that the ALJ misstated his RFC; having rejected this contention above, we consider only those arguments which exist independent of the ALJ's RFC determination. Sanchez's only such argument is that the three types of jobs on which the ALJ based his vocational decision could not be done by someone with Sanchez's RFC.[6]

---

[6] To the extent that Sanchez's briefing can be read to criticize the ALJ's failure to submit all of Sanchez's limitations to the expert, "[w]e do not require an ALJ to submit to the vocational expert every impairment *alleged* by a claimant" so long as "the hypotheticals posed . . . 'accurately portray' the claimant's impairments . . .." *Johnson v. Comm'r of*

5

After listening to Sanchez's testimony and independently questioning Sanchez at the hearing before the ALJ, a vocational expert determined that Sanchez could work in a "small hand packaging-type position," in a "small products assembly-type position," or as a "patcher." The expert further testified that, taken together, approximately 37,000 such positions existed in the national economy. All of these jobs, the expert testified, would allow Sanchez the option to sit and stand at his election. Sanchez argues that the ALJ erred in crediting this testimony, as the vocational expert testified that small products assembly requires a degree of near visual acuity and that patching and small hand packaging could involve lifting more than five pounds, both of which are foreclosed by Sanchez's RFC.

We hold that the ALJ did not err in finding that Sanchez had sufficient visual acuity to perform small products assembly. Contrary to Sanchez's contention, the ALJ's determination that Sanchez retained 20/70 vision in his better eye did not preclude any employment which could require a degree of visual acuity. Indeed, Sanchez's attorney specifically asked the vocational expert for further clarification about the degree of visual acuity required for small products before determining that Sanchez could do such work. Further, Sanchez admitted that he retains enough visual acuity to operate a motor vehicle alone. On this record, we conclude substantial evidence supports the ALJ's determination that Sanchez retained sufficient visual acuity to perform small products assembly. The vocational expert testified that 18,000 small products assembly jobs exist

_Soc. Sec._, 529 F.3d 198, 206 (3d Cir. 2008) (quoting _Rutherford v. Barnhart_, 399 F.3d 546, 554 (3d Cir. 2005)) (emphasis in original).

6

in the national economy, and precedent suggests that this is sufficiently "significant" to support the ALJ's decision.[7]

Because Sanchez had sufficient visual acuity to perform small products assembly, we see no reason to reverse even if the ALJ failed to exclude those hand-packaging and patching jobs that would have required lifting more than five pounds.[8]  Indeed, even if *all* hand-packaging and patching jobs were to have been excluded, the existence of a significant number of small products assembly jobs supports our decision to affirm.

III.

For the foregoing reasons, we conclude that the ALJ's denial of benefits was supported by substantial evidence in the record.  Thus, we will affirm.

---

[7] *See, e.g.*, *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) (finding 10,000 jobs in the national economy "significant").

[8] The vocational expert's testimony was that "the packaging [jobs] may require lifting above five pounds" and that "[t]he patcher may be over five pounds."