NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 20-2771
_____

MARK W. MUSCHKO,
                                    Appellant

v.

COMMISSIONER SOCIAL SECURITY
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 2-19-cv-09361)
District Judge: Claire C. Cecchi
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1
on April 16, 2021

Before: CHAGARES, JORDAN, and SCIRICA, *Circuit Judges.*

(Filed: August 18, 2021)

_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

SCIRICA, *Circuit Judge*

We must decide whether the District Court erred in affirming the Social Security Commissioner's denial of Mark Muschko's claim for disability insurance benefits under Title II of the Social Security Act ("the Act"). Because substantial evidence supports the Administrative Law Judge's decision that Muschko is not entitled to disability insurance under the Act and the District Court made no errors of law, we will affirm.

I[1]

In reviewing a denial of social security disability insurance benefits, "[o]ur review of legal issues is plenary," *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000), but "[w]e review the Agency's factual findings only to determine whether the administrative record contains substantial evidence supporting the findings," *Allen v. Barnhart*, 417 F.3d 396, 398 (3d Cir. 2005). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 633 (3d Cir. 2010) (quoting *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003)). The standard is deferential and is satisfied by the presence of evidence in the record that is "more than a mere scintilla but . . . somewhat less than a preponderance." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (quoting *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)).

---

[1] The District Court had jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). We have jurisdiction under 28 U.S.C. § 1291.

II

In the agency proceeding, Muschko had the burden of establishing that he became disabled at some point between the onset date of disability, December 31, 2002, and his date last insured, December 31, 2007. *See id.* at 612; *see also* 42 U.S.C § 423(a)(1)(A); 20 C.F.R. § 404.131. The ALJ examined the evidence and followed the five-step evaluation process used to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(4).[2] The ALJ found Muschko did not satisfy the criteria for per se disability and remained capable of performing a reduced range of work activities. And after questioning a vocational expert, the ALJ concluded Muschko was not disabled because a significant number of jobs existed in the national economy for an individual with his vocational profile and residual functional capacity. In this appeal, Muschko contends the ALJ (1) improperly evaluated the evidence, and (2) failed to provide the vocational expert with an accurate description of Muschko's limitations. We address these contentions in turn.

A

Muschko's main contention is that the ALJ improperly evaluated the evidence. First, he argues there is not substantial evidence supporting the ALJ's finding that

---

[2] Under the five-step evaluation process, the ALJ determines (1) whether the claimant engaged in gainful activity during the alleged period of disability; (2) whether he has a severe impairment that limits his ability to work; (3) if he has such an impairment, whether the impairment is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that there is a per se disability, or, if not, how much residual functional capacity he retains in spite of his impairment; (4) whether his residual functional capacity is sufficient to perform his past relevant work; and (5) whether there is other work in the national economy that he can perform. *Sykes*, 228 F.3d at 262–63.

3

Muschko did not establish per se disability under Listing 11.14.[3] Second, he argues that the ALJ's residual functional capacity determination is not supported by substantial evidence. We disagree on both counts.

i

Muschko contends the ALJ erred in finding he did not satisfy the standard for establishing per se disability under Listing 11.14 (peripheral neuropathy). To meet Listing 11.14A, a claimant must establish that he has "[d]isorganization of motor function in two extremities." 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 11.14. This can be an impairment to the lower extremities resulting in an inability "to stand up from a seated position, [or] balance in a standing position and while walking . . . without the assistance of another person or the use of an assistive device." 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 11.00D(2)(a), (b). Or it can be an impairment to the upper extremities resulting in a loss of function "that very seriously limits your ability to independently initiate, sustain, and complete work-related activities involving fine and gross motor movements." 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 11.00D(2)(c).

With respect to Muschko's lower extremities, there is evidence that throughout the relevant time period he retained a normal stance and gait, as well as an ability to tandem walk, get up from kneeling on either leg, rise on his heels and toes, and hop on either leg.

---

[3] The Listings, 20 C.F.R. pt. 404, subpt. P., app. 1, are a regulatory device used to streamline the decision-making process by identifying those claimants whose medical impairments are so severe that they would be found disabled regardless of their vocational background—*i.e.*, establishing per se disability for certain impairments. 20 C.F.R. § 404.1525(a); *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990).

Regarding Muschko's upper extremities, there is evidence that he retained full muscle power and reflexes in his arms, as well as intact fine finger movements bilaterally. Accordingly, as the District Court correctly held, substantial evidence supports the ALJ's finding that Muschko did not satisfy the high standard for establishing per se disability under Listing 11.14A.[4]

ii

Muschko challenges the ALJ's determination regarding his residual functional capacity ("RFC"). The ALJ determined Muschko's impairments significantly limited his ability to perform basic work activities, but that he retained sufficient RFC to perform a significantly reduced range of work activities.[5] Muschko contends that, in making his

---

[4] "[Muschko] specifically refers to Listing 11.14A when discussing the medical evidence . . . ." To the extent he also contends he satisfied Listing 11.14B's requirements, he failed to establish that he suffered the requisite difficulties understanding, remembering, applying information, interacting with others, concentrating, or managing himself. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 11.14B. Although Muschko self-reported tiredness and decreased short-term memory, the ALJ considered these self-reports together with medical records indicating Muschko did not exhibit deficits in understanding, concentrating, or remembering. Because Muschko's alleged symptoms were never confirmed by any examinations and other record evidence shows Muschko retained his mental faculties, Listing 11.14B does not provide a basis for reversing the District Court.

[5] Specifically, Muschko could perform work that required lifting and carrying no more than 10 pounds; standing and walking no more than four hours in an eight-hour day, with an additional allowance for alternating between sitting and standing at-will, so long as he was not off-task more than 10% of the workday; occasional climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; frequent (but not constant) balancing; occasional stooping, kneeling, crouching, and crawling; frequent (but not constant) handling, fingering, and feeling; no operation of foot controls; occasional pushing and pulling with the lower extremities; no exposure to hazards such as machinery, heights, excessive vibration, extreme temperatures, wetness, and humidity; and no work that required use of a keyboard.

RFC decision, the ALJ (1) lacked supporting medical evidence, (2) impermissibly discounted Muschko's subjective complaints of pain, and (3) failed to adequately credit certain doctors' opinions.

First, there is substantial medical evidence in the record supporting the ALJ's RFC finding. Examinations by treating neurologists Norman Latov, M.D., Ph.D., and Eric B. Geller, M.D., as well as consulting neurologist Andrew Pachner, M.D., showed that, despite moderately impaired vibration in the large toes and mildly impaired sensation at the ankles, Muschko had normal strength and a normal gait, could tandem walk, perform fine finger movements, rise on his heels and toes, hop on either foot, and get up from a kneeling position with either leg. In terms of cognitive ability, Dr. Geller indicated Muschko possessed normal memory, concentration, and attention, while Dr. Pachner did not feel the need to perform a formal mental status examination because Muschko's "conversational content . . . was not consistent with an obvious cognitive disorder," Admin. Tr. 346. This medical evidence amounts to substantial evidence supporting the ALJ's RFC finding. Accordingly, we must affirm the RFC finding, even if, as Muschko contends, there is some contrary evidence in the record. *Cf. Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.").

Second, Muschko contends the ALJ did not adequately address his subjective complaints of pain. The ALJ noted Muschko's subjective complaints but discounted them to the extent they were contradicted by the medical evidence discussed above and

6

Muschko's own reports of activities he performed on a regular basis. This evidence included Muschko's representations that he drove, ran errands, went grocery shopping, and performed yard work.[6] We conclude that the ALJ rightfully considered medical evidence and evidence of Muschko's regular activities and adequately explained how they contradicted Muschko's statements about his pain and the limiting effects of his symptoms. *See, e.g.*, 20 C.F.R. § 404.1529(c)(3)(i) (stating the agency will consider claimant's daily activities in evaluating subjective complaints); *Burns v. Barnhart*, 312 F.3d 113, 129–30 (3d Cir. 2002) (holding ALJ appropriately considered claimant's contradictory activities and the lack of medical evidence in finding claimant was not fully credible).

Third, Muschko challenges the ALJ's discounting of certain medical opinions. The ALJ explained that two doctors' opinions were entitled to some weight because the doctors had examined and treated Muschko, but their opinions were discounted to the extent they contained conclusory statements contradicted by evidence. So, while the ALJ factored into his RFC analysis Muschko's symptoms as outlined by the doctors, he did not credit their conclusory statements about Muschko's ability to maintain gainful employment where those statements were not supported by a function-by-function

---

[6] Muschko also reported that he performed his own personal hygiene, prepared meals, sent emails, cleaned, made small home repairs, blew snow off of his driveway, washed his car, shopped for other necessities, and attended a weekly 3-hour professional support group function. The ALJ explained that these activities were not consistent with the alleged severity of Muschko's physical symptoms. And although Muschko contends these activities do not support the RFC determination, he relies on our opinion in *Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204 (3d Cir. 2019), which, in addition to being distinguishable, we need not address due to its non-precedential status.

assessment of Muschko's abilities and were contradicted by record evidence. The ALJ was required to determine how much weight to afford the medical opinions, *see* 20 C.F.R. § 404.1527(c), and was well within his discretion to not credit the doctors' conclusory statements, *see Brown v. Astrue*, 649 F.3d 193, 196 n.2 (3d Cir. 2011) (stating that a physician's opinion "does not bind the ALJ on the issue of [RFC]"); *see also* 20 C.F.R. § 404.1527(d)(1) (explaining that "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled"). Moreover, the ALJ adequately explained his reasoning for giving only partial weight to the doctors' opinions. *See Zirnsak*, 777 F.3d at 614 ("[T]he ALJ is free to accept some medical evidence and reject other evidence, provided that he [or she] provides an explanation for discrediting the rejected evidence."); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) (explaining that a treating physician's opinion may be outweighed by other evidence). Accordingly, the ALJ's handling of the medical opinion evidence does not provide a basis for reversal.

The ALJ properly considered the medical, subjective, and opinion evidence in making his RFC determination, which we conclude is supported by substantial evidence.

B

Muschko also contends the ALJ did not give an accurate portrait of his impairments to the vocational expert, and thus the District Court erred as a matter of law in affirming the ALJ's decision. Muschko essentially argues that the ALJ did not convey every alleged impairment to the vocational expert. But "[w]e do not require an ALJ to submit to the vocational expert every impairment *alleged* by a claimant." *Johnson v.*

8

*Comm'r of Soc. Sec.*, 529 F.3d 198, 206 (3d Cir. 2008) (quoting *Rutherford*, 399 F.3d at 554). Instead, a vocational expert's testimony is "as valid as the limitations that the ALJ [includes] in the hypothetical." *Allen*, 417 F.3d at 407. We have already concluded that substantial evidence supports the ALJ's decision as to Muschko's limitations and corresponding RFC. *See supra* Part II.A.ii. And the ALJ included all those limitations in the hypotheticals posed to the vocational expert. Accordingly, "[n]othing about the hypothetical[s] requires reversal." *Johnson*, 529 F.3d at 206.

III

For the reasons provided, we will affirm the District Court's order.